UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BETH ANN FALLON,                         )
                                         )
    Plaintiff,                          )
                                         )
v.                                       ) 1:10-cv-00058-JAW
                                         )
SOCIAL SECURITY ADMINISTRATION           )
COMMISSIONER,                            )
                                         )
    Defendant                           )

## RECOMMENDED DECISION

The Social Security Administration found that Beth Ann Fallon, 39 years old as of the date of alleged onset of disability, has a collection of occupationally significant physical and mental impairments, but retains the functional capacity to perform substantial gainful activity in occupations existing in significant numbers in the national economy, resulting in a denial of her application for disability benefits under Title II and Title XVI of the Social Security Act. Fallon commenced this civil action for judicial review of the final administrative decision, alleging errors related to the Commissioner's finding that she can perform substantial gainful activity. I recommend that the Court affirm.

## Standard of Review

The standard of review is whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not

conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

**The Administrative Findings**

The Commissioner's final decision is the September 16, 2009, decision of Administrative Law Judge John F. Edwards (R. 4-22) because the Decision Review Board did not complete its review during the time allowed (id. at 1-3).[1]

At step 1, the Administrative Law Judge found that Fallon meets the insured status of Title II through September 30, 2008, and has not engaged in substantial gainful activity since September 15, 2006, the date of alleged onset of disability. (Findings 1 & 2.) Fallon does not object.

At step 2, the Judge found that Fallon's hepatitis-C and alleged occipital, hip, shoulder, and elbow pain, and alleged bipolar disorder and kleptomania, are unsubstantiated impairments for purposes of step 2, but that the following severe physical impairments are present: obesity, degenerative joint disease of the knees, mild degenerative disk disease, affective disorder/major depressive disorder (recurrent), anxiety-related disorder/rule out panic disorder without agoraphobia, and personality disorder/personality disorder with antisocial features. (Finding 3.) Fallon does not challenge this finding.

At step 3, the Judge found that this combination of impairments would not meet or equal any listing within the Commissioner's Listing of Impairments, considering in particular musculoskeletal listings 1.02 and 1.04 and mental disorder listings 12.04, 12.06, and 12.08. (Finding 4.) Fallon does not challenge this finding, either.

At step 4, the Judge found that the medical evidence and other evidence of record reasonably demonstrates that Fallon's combined impairments result in the following residual

---

[1] The administrative decision and the transcript of the administrative hearing are at docket number 5-2.

2

functional capacities and limitations:

> to lift and/or carry 10 pounds occasionally;
>
> to lift and/or carry less than 10 pounds frequently;
>
> to stand and/or walk in 30 minute increments for up to two hours out of an eight-hour workday with normal breaks;
>
> to sit for at least six hours out of an eight-hour work day with normal breaks, subject to having freedom to alternate position at will;
>
> to push and/or pull with the upper extremities within the weight tolerances provided for lifting and/or carrying;
>
> to never push/pedal and/or pull with the lower extremities;
>
> to balance, stoop, or crouch occasionally, but never climb, kneel or crawl, or negotiate hazards, such as unprotected heights or uneven/rough/slippery/vibrating walking surfaces;
>
> to understand and remember basic instructions up to four steps, commensurate with any person who has obtained a GED;
>
> to execute basic tasks up to four steps consistently throughout the course of a normal work day/work week;
>
> to tolerate brief and superficial interaction with the general public, coworkers and supervisors; and
>
> to adapt to routine changes in the work place.

(Finding 5.) The Judge rejected allegations of a far more debilitating subjective experience, finding Fallon to be only minimally credible based on past drug and alcohol use, violation of a narcotics contract with a prior treatment provider, and both poor work history and past work of a kind he deemed inconsistent with Fallon's allegations concerning the degree of her mental health symptoms. (Id.) The Judge further found that this residual functional capacity prevents past relevant work as a short order cook. (Finding 6.)

At step 5, based on vocational expert testimony, the Judge found that Fallon could still

engage in sedentary substantial gainful employment, including jobs such as document preparer, telephone answering service operator, credit checker, and surveillance system monitor. (Finding 10.) Fallon challenges both the residual functional capacity finding and the record developed in support of the step 5 finding.

### Discussion of Plaintiff's Statement of Errors

Fallon challenges the "four-step" restriction on mental functioning, arguing that it is neither based on any medical opinion nor consistent with any social security classification. (Statement of Errors at 3-4.) She maintains that the jobs identified by the vocational expert for step 5 purposes are incompatible with her mental limitations because they are all classified as reasoning level 3 in the Dictionary of Occupational Titles. (Id. 2-3.) On a related note, Fallon asserts that the Judge failed to include a concentration, persistence, and pace restriction in his residual functional capacity finding, even though he found evidence of more-than-mild impairment in this area. (Id. at 5-6.) In addition, she faults the finding that she can perform sedentary work if she is given leeway to alternate her position at will, contending that the "at will" qualification is an impermissible way of framing a functional capacity finding under the Commissioner's rules. (Id. at 6-7.) Finally, Fallon complains that the transcript of the hearing is "riddled with 'INAUDIBLE' passages," particularly in connection with the testimony of James Claiborn, Ph.D., which she feels is a sufficient independent reason to remand the case for further proceedings. (Id. at 7.) The following discussion begins with the physical, sit/stand issue.

**A.     Sit or stand at will**

Fallon contends that it was error for the Judge to express her need to alternate between sitting and standing as "at will," without supplying specific time intervals. She relies on Social Security Ruling 96-9p, which requires that a residual functional capacity assessment be specific

in relation to the frequency of a claimant's need to alternate between sitting and standing when exertional limitations restrict the claimant to a subset of sedentary work and the need to alternate position exceeds what can be accommodated by scheduled breaks.  1996 SSR LEXIS 6, *1, *8, *18-19, 1996 WL 374185, *1, *3, *7.  See also Social Security Ruling 83-12, 1983 SSR LEXIS 32, *9-10, 1983 WL 31253, *4 ("Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.  In cases of unusual limitation of ability to sit or stand, a VS [vocational specialist] should be consulted to clarify the implications for the occupational base.").  The Court recently adopted a recommended decision in Cutting v. Astrue that rejected the argument Fallon presses here.  Civ. No. 09-423-P-S, 2010 U.S. Dist. Lexis 71937, *8, 2010 WL 2595144, *3 (June 23, 2010) (affirmed without objection).  I agree with the position asserted by Magistrate Judge Rich in Cutting that a residual functional capacity finding of a need to alternate position at will or as needed satisfies the specificity requirement stated in Ruling 96-9p.  Such a functional limitation is specific.

In this case, the Judge asked the vocational expert to take this limitation into consideration and the vocational expert identified four jobs (document preparer, surveillance system monitor, and telephone answering service operator) that, according to his expertise, would accommodate this limitation.  (R. 64-65.)  The vocational expert acknowledged that the Dictionary of Occupational Titles does not address the sit-stand question, and testified that this was an area in which he would have to speak from experience in the field.  (R. 68.)  He specifically testified that the sit-stand requirement is accommodated by these four jobs and that he ruled out production jobs because the sit-stand option does not work so well with those.  (Id.)  The vocational expert's testimony provided the Judge with substantial evidence on which to base a step 5 finding.

B.     **Detailed instructions and tasks**

With regard to memory, understanding, and concentration, persistence, and pace limitations, the Judge found that Fallon had a residual functional capacity to perform what he called "basic instruction" and "basic tasks" of "up to four steps." (R. 15.) Based on a hypothetical including this limitation, the vocational expert testified at Fallon's hearing that such a limitation would not prevent a person from performing the occupations of document preparer, telephone answering service operator, credit checker, and surveillance system monitor. (Finding 10, R. 21, VE testimony, R. 64-65.) As it happens, every one of these occupations is classified in the Dictionary of Occupational Titles as having a reasoning level of 3.[2] The preliminary question is whether there is substantial evidence in the record to support the Judge's residual functional capacity finding. If there is, then the secondary question is whether there is substantial evidence in the record that someone with such a residual functional capacity could perform work existing in significant numbers in the national economy.

In his step 2 discussion, the Judge found that Fallon has moderate difficulties with concentration, persistence, and pace. (Finding 4, R. 14.) As an example, he observed that Fallon is unable to organize and pay her bills, but is able to count change, handle a savings account, and use money orders. (R. 14-15.) The Judge assessed that Fallon's ability to complete her own function report and her ability to complete four-step simple instructions during a psychological examination with Dr. Quinn demonstrated that her difficulties did not prevent her from understanding and following simple instructions. (R. 15.) However, in his residual functional capacity finding, the Judge found that Fallon has the capacity to perform "basic" instructions and tasks of up to four steps. (Finding 5, R. 15.)

---

[2] The Dictionary of Occupational Titles sections are 249.587-018 (document preparer), 235.662-026 (telephone answering service operator), 237.367-014 (credit checker/call-out operator), and 379.367-010 (surveillance system monitor). Fallon has attached the definitions to her statement of errors.

In making his residual functional capacity assessment, the Judge relied heavily on the expert report prepared by Edward Quinn, Ph.D., following a consulting examination (Ex. 7F). He also relied on the opinion of James Claiborn, Ph.D., an independent psychological expert who testified at the hearing. The Judge placed less weight on the opinions of David Houston, Ph.D. (Exs. 16F, 17F) and Lewis Lester, Ph.D. (Exs. 10F, 11F), both of whom performed the Commissioner's psychiatric review technique and mental residual functional capacity assessments on behalf of Disability Determination Services.[3] (R. 19-20.) These opinions are described below. In the course of explaining his residual functional capacity decision, the Judge reviewed and discussed the record as a whole and made a strong adverse credibility determination about the limiting effects of Fallon's impairments. (R. 16-17.)

Fallon's statement of errors raises a technical challenge about the ability of the Judge (or any judge) to find a capacity for "basic" tasks and level 3 reasoning jobs when there has been a finding of a "moderate" limitation in concentration, persistence, and pace. Fallon does not otherwise challenge the Judge's adverse credibility finding or his characterization of what the record as a whole reveals about Fallon's degree of mental limitation. In fact, Fallon has not highlighted any of her underlying medical records in support of her position that she has a totally disabling mental condition. Fallon's position, in effect, is that the Judge could not engage in those analyses himself (an independent residual functional capacity finding based on a longitudinal review of the record and a credibility assessment) because there is no suitable expert opinion to undergird them.

The Judge based his decision that Fallon is not disabled on a step 5 determination. At step 5 of the sequential evaluation process, the burden is on the Commissioner to demonstrate

---

[3] Exhibits 7F, 10F and 11F are found in part 2 of the medical records, docket number 5-8. Exhibits 16F and 17F are found in part 3, docket number 5-9.

that a significant number of jobs exist in the national economy that the claimant could perform. 20 C.F.R. §§ 404.1520(g), 419.920(g); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982). This burden is limited to producing substantial evidence that a reasonable mind would accept as adequate to demonstrate the existence of work the claimant can do. The Commissioner must prove that the claimant's RFC, age, education, and work experience enable the performance of other substantial work, but the Commissioner does not assume any burden to prove the non-existence of limitations that might foreclose such work. Rather, it is the claimant's burden of production and persuasion—preliminary to step 4 of the evaluation process—to prove all relevant limitations concerning residual functional capacity. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); Clarification of Rules Involving Residual Functional Capacity Assessments, 68 Fed. Reg. 51,153, 51,157 (Aug. 26, 2003) ("[W]e are not responsible for providing additional evidence of RFC or for making another RFC assessment at step 5. [W]e use the same RFC assessment at step 5 that we made before we considered . . . step 4, a point in our process at which you have the burdens of production and persuasion.); Yuckert, 482 U.S. at 146 n.5 (explaining that the claimant is in the better position to provide information about his or her own medical condition)).

Ordinarily, the Commissioner will meet the step 5 burden, or not, "by relying on the testimony of a vocational expert" in response to a hypothetical question whether a person with the claimant's RFC, age, education, and work experience would be able to perform other work existing in the national economy. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). At the hearing, the Commissioner must transmit a hypothetical to the vocational expert that corresponds to the claimant's RFC and vocational profile. Id.

The Commissioner's rulings and regulations anticipate that the testimony of a vocational

8

expert will be consistent with information supplied in the Department of Labor's Dictionary of Occupational Titles (DOT). The Commissioner has a policy of relying "primarily on the Dictionary of Occupational Titles (including its companion publication, the [Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)]" to classify the various characteristics of occupations. Soc. Sec. Ruling 00-4p, 2000 SSR Lexis 8, *4, 2000 WL 1898704, *2. However, administrative law judges do not base their step 5 findings exclusively on an independent review of the DOT. At the hearing level, where complex vocational issues exist, vocational expert testimony is required. Judges therefore call upon vocational experts and expect that they will relate their opinions regarding work in the national economy in reference to the classifications and definitions supplied in the DOT.

At times, the opinion of a vocational expert will conflict with what is stated in the DOT. Social Security Ruling 00-4p explains that a judge should not rely on vocational expert testimony that conflicts with the DOT, unless the judge first obtains a reasonable explanation from the vocational expert that resolves or explains the basis for the conflict. Id., 2000 SSR Lexis 8, *4-5, 2000 WL 1898704, *2. In particular, Ruling 00-4p cautions that the DOT's classification about the exertional level and skill level of an occupation is presumptively binding because the Commissioner's own regulations offer a direct correlation between the Commissioner's exertion and skill classifications and those stated in the DOT. Id., 2000 SSR Lexis 8, *6-8, 2000 WL 1898704, *3. Discerning whether a conflict exists in other areas is not so clear cut.

For reasons that follow, I conclude that reliable medical expert opinion supports the Judge's residual functional capacity finding and that reliable vocational expert testimony supports the Judge's finding that Fallon is able to perform work existing in significant numbers in the national economy.

### 1. There is substantial evidence in support of a mental restriction to "basic, four-step" work.

The question is whether the medical expert opinions of record provide substantial evidence in support of the challenged finding that Fallon's ability to understand and carry out instructions can be expressed as "basic" rather than "simple," and as limited to "four-steps," rather than as having no particular limitation on the number of steps she can perform. The conundrum arises, in part, because of recently eclipsed decisional law in this District to the effect that a restriction to simple instructions and tasks does not permit performance of jobs assigned a reasoning level of 2 or higher in the Dictionary of Occupational Titles. Recently, this Court has changed course on that position, holding that jobs with a reasoning level of 2 also qualify as simple if a vocational expert identifies the jobs in response to a hypothetical question involving a limitation to simple tasks and instructions. Little v. SSA Comm'r, No. 1:10-cv-96-JAW, 2010 U.S. Dist. Lexis 136295, *4-8, 2010 WL 5367015, *3 (D. Me. Dec. 21, 2010) (Kravchuk, Mag. J., Rec. Dec.) (affirmed in the absence of objection); Pepin v. Astrue, No. 2:09-cv-464-GZS, 2010 U.S. Dist. Lexis 98294, 2010 WL 3361841 (D. Me. Aug. 24, 2010) (Rich, Mag. J., Rec. Dec.) (affirmed in the absence of objection). In the recommended decision adopted by the Court in Pepin, the Court acknowledged that the Seventh Circuit Court of Appeals has held that a limitation to simple work is not inconsistent with jobs having a reasoning level 3 in the DOT. Pepin, 2010 U.S. Dist. Lexis 98294, *13-14, 2010 WL 3361841, *4 (citing Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009)).

As decisional law in this District now stands, an administrative decision is highly questionable if the adjudicator has found a limitation to simple instructions and an ability to perform occupations having a reasoning level of 3 in the Dictionary of Occupational Titles, without eliciting a reasonable explanation from the vocational expert, assuming the potential

conflict was made apparent to the adjudicator at the hearing. However, if the residual functional capacity finding is for basic rather than simple tasks, the tipping point might shift in favor of the administrative decision. For reasons that follow, I find that the opinions offered by Drs. Quinn and Claiborn in this case reliably undergird the Judge's decision to express Fallon's residual functional capacity in terms of an ability to concentrate on and persist with "basic" tasks of "up to four steps." Although the opinions offered by the Commissioner's other consultants involve a limitation to simple tasks, they did not prevent the Judge from expressing his finding otherwise or from performing his own assessment of what the entire record reveals and making highly unfavorable credibility findings. Together, the multiple evidentiary sources relied on by the Judge offer substantial evidence in support of his residual functional capacity finding. For the Court's convenience, the opinions of the four expert consultants are set forth below. The opinions of Fallon's treatment providers are omitted, as Fallon has not argued that her provider's opinions are entitled to controlling weight or that the Judge did not reject them for legitimate reasons.

      *a. Dr. Quinn*

Dr. Quinn performed a consulting examination in April 2008 and opined that Fallon's "attention, sustained concentration, and memory all appear to be within normal limits." (R. 411.) According to Dr. Quinn, Fallon was "able to complete 4-step simple instructions" during his evaluation. (Id.) In his medical source statement concerning Fallon's ability to perform employment activities, Dr. Quinn stated that "[d]ifficulties with attention, concentration, persistence, pace and memory [were] not observed." (R. 412.) Dr. Quinn's examination-based opinion effectively states that Fallon does not present a significant concentration, persistence, and pace limitation. It is less clear what to make of his indication that she was able to follow

four-step instructions, though ability to understand and remember instructions is typically associated with memory and understanding rather than concentration, persistence, and pace. At the very least, this assessment offers a basis to find that Fallon can understand and carry out four-step operations.

### b. Drs. Lester and Houston

Dr. Lester completed a psychiatric review technique (PRT) form and a mental RFC assessment form in May 2008. On the PRT form, Dr. Lester checked off "moderate" for the degree of limitation Fallon would experience in relation to maintaining concentration, persistence, and pace.[4] (R. 436.) He also checked off the "moderately limited" boxes for the following concentration, persistence, and pace categories: ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual; ability to work in coordination with or proximity to others without being distracted by them; and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace. (R. 440.) He otherwise made summary conclusions that would rule out detailed instructions but allow work involving short and simple instructions and an ordinary routine without special supervision. (Id.) He further explained that Fallon's attention and concentration were sufficient for her to persist with simple tasks at a consistent pace for two-hour blocks of time. (R. 442.)

In August 2008, Dr. Houston performed new PRT and mental RFC assessments. Like Dr. Lester, Dr. Houston found a moderate degree of limitation in relation to concentration, persistence, and pace on the PRT form. As for concentration, persistence, and pace summary

---

[4] Dr. Lester also checked off the "markedly limited" box for the ability to understand and remember detailed instructions and for the ability to carry out such instructions. In his narrative RFC findings, Dr. Lester explained that Fallon's memory and understanding are sufficient to allow simple, repetitive tasks and procedures. Fallon's challenge is directed to the concentration, persistence, and pace findings rather than memory and understanding.

12

conclusions, Dr. Houston noted the same moderate limitations. In his narrative RFC findings, Dr. Houston found that Fallon is able to carry out such simple tasks.[5] (R. 519.)

Neither Dr. Lester nor Dr. Houston assessed an ability to understand or carry out instructions above the "simple" level, despite noting in their PRTs that Dr. Quinn had examined Fallon and reported that she was able to complete four-step instructions and that her attention, concentration, and memory were intact. As noted above, Dr. Quinn had also indicated that "attention, sustained concentration, and memory all appear to be within normal limits" (R. 411) and that "[d]ifficulties with attention, concentration, persistence, pace and memory [were] not observed" (R.412).

### c. Dr. Claiborn

Dr. Claiborn reviewed the medical records, listened to Fallon's hearing testimony, had an opportunity to question her, and offered an opinion that "basic" tasks accurately captured Fallon's mental residual functional capacity. At Fallon's hearing, the Judge walked through the PRT form and the mental RFC form with Dr. Claiborn, who effectively provided a third mental RFC opinion. As far as memory and understanding are concerned, Dr. Claiborn testified that Fallon would not have any difficulty understanding or remembering "basic instructions." (R. 57.) As for ability to tend to "basic tasks" through the day and week, Dr. Claiborn opined that there would not be more than mild difficulty and that Fallon would be able to perform at this level. (Id.) Because the quality of the transcript is at issue, this portion of the transcript is reproduced here:

> Q [INAUDIBLE] review with you, doctor, limitations that you might expect someone [INAUDIBLE]. Do you believe that such [INAUDIBLE] in terms of understanding or remembering basic instructions perform tasks?
> A I don't believe she'd have any [INAUDIBLE] to understand basic

---

[5] Dr. Houston found a moderate limitation in regard to understanding and remembering detailed instructions, whereas Dr. Lester felt there was evidence of marked limitation.

13

>instructions.
>Q Now in terms of ability to tend to basic tasks over the course of a normal workday or work week?
>A I don't believe you'd see any more than mild difficulty with that.
>Q Do you believe that she would be able to concentrate [INAUDIBLE] workday or a work week?
>A I believe so.

Id.

"The [Commissioner] may (and, under his regulations, must) take medical evidence. *But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts*." Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (emphasis added).

Dr. Quinn's psychological examination report supplied the Judge with a reasonable basis to question Dr. Lester's and Dr. Houston's concentration, persistence, and pace limitation to strictly "simple" tasks. Likely, it was due to his own review of the record and the indication by Dr. Quinn that he did not observe *any* limitation in concentration, persistence, and pace, that the Judge sought a third expert opinion at the hearing from Dr. Claiborn on the degree of Fallon's inability to handle detailed instructions and tasks. Dr. Claiborn was familiar with Fallon's medical records and had an opportunity to interact with her. Dr. Claiborn's testimony indicated that he considered Fallon to be capable of performing "basic" tasks.

In his decision, the Judge gave the greatest weight to Dr. Quinn's and Dr. Claiborn's expert opinions, reviewed and discussed the record as a whole, and adequately explained the basis for his finding that the degree of Fallon's mental impairment did not preclude basic, four-step tasks. As a component of this finding, the Judge made a strong adverse credibility determination (R. 16-17) that Fallon has not challenged here, on its own terms.[6] Together, the

---

[6] In the absence of such a challenge, I have not offered the Court an independent evaluation of the credibility assessment, mindful that "issues of credibility and the drawing of permissible inferences from evidentiary facts are

opinions of Drs. Quinn and Claiborn and the independent review and credibility determination of the Judge supply substantial evidence in support of a residual functional capacity finding for basic, four-step tasks rather than simple tasks. Although "simple" is the term that is most commonly applied in connection with moderate concentration, persistence, and pace limitations, Fallon has not explained why an adjudicator is shackled to this term and cannot chose another term that he finds more accurately captures a claimant's actual residual functional capacity.[7] So long as that choice is reliably supported by the record, the question of its vocational impact is properly put before a vocational expert at hearing.

### 2. *There is reliable evidence of work in the national economy that Fallon can perform.*

When it comes to the capacities to understand, remember, carry out, and persist with tasks, the Commissioner's regulations described work instructions, tasks, and procedures in terms of being "detailed," "complicated," or "complex," on the one hand, and "simple," on the other. 20 C.F.R. §§ 404.1569a(c)(1)(iii), 416.969a(c)(1)(iii); Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P, § 12.00(C)(3). Within this range exist a variety of potential functional restrictions, such as a restriction precluding fast-paced work or highly stressful work, or a restriction requiring a distraction-free environment, but the regulations do not afford any system to chart the range of concentration demanded by the most simple and the most complex unskilled work and they do not forbid the use of terms other than simple to describe where a claimant is on the continuum between the most simple and the most complex tasks involved in unskilled labor. By comparison, the Department of Labor's Dictionary of Occupational Titles breaks the reasoning demands of work into six levels, ranging from "simple one- and two-step

---

the prime responsibility of the Secretary." Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965).

[7] Fallon's statement of errors does not discuss her medical records in any detail. For example, she has not pointed to any of her treatment records to undercut the Judge's residual functional capacity finding.

15

instructions" at level one to "apprehend[ing] the most abstruse classes of concepts" at level six. Dictionary of Occupational Titles, Appendix C, § III. Each of these levels is supposed to align with a different degree of general educational development (GED).[8] In this case, the concern is with GED reasoning level three.

Levels one through three of the Dictionary of Occupational Titles' general educational development (GED) reasoning spectrum all call upon the worker to apply "commonsense understanding" to carry out instructions. At level one, the instructions are simple verbal instructions of one or two steps. At level two, the instructions are described as "detailed but uninvolved" and they may be presented orally or in writing. At level three, the detailed but uninvolved language is not repeated, but instructions may be presented in written, oral, or diagrammatic form. In addition to the detail of instructions and the manner in which instructions are presented, levels one through three all involve a standardized regimen, whereas at level four, the idea of "limited standardization" is introduced. At level one, there may be "occasional" variability, but variability is the exception. At level two, "a few concrete variables" will exist. At level three, "several concrete variables" will exist. Id.

The DOT does not assign a specific number of maximum steps to instructions and operations existing at reasoning levels two and three. The DOT language does describe "a few" variables at level two or "several" variables at level three, but it does not say how many steps the standard routine or the varied routines would entail. In other words, the "basic, four-step" limitation found by the Judge is neither clearly aligned with DOT reasoning levels two or three, nor clearly in conflict with them. An occupation involving a few variables might well entail four-step operations. So might an occupation involving several variables. Consequently, there is

---

[8] The Dictionary of Occupational Titles also offers GED levels for mathematical development and language development. Neither is involved here.

no clear conflict between the Judge's residual functional capacity finding and his acceptance of testimony concerning occupations with a reasoning GED level of three. For this reason, Ruling 00-4p does not require remand. In this kind of scenario, the Judge should be permitted to rely on vocational expert testimony that supplies a level three reasoning job in response to a hypothetical requesting jobs involving basic, four-step instructions and tasks.

Here, the vocational expert supplied the Judge with four different level three reasoning jobs in response to such a hypothetical[9] and, importantly, the vocational expert also testified that his responses would be consistent with the definitions supplied in the Dictionary of Occupational Titles. (R. 62.) This testimony is substantial evidence in support of the Judge's step 5 finding. While there may be some question about whether a particular level three reasoning job can be performed by someone restricted to basic, four-step operations, Fallon was represented by counsel at her hearing and the Judge permitted Fallon's counsel to question the vocational expert. There is an expectation that counsel will explore these concerns with the vocational expert at the hearing, not leave such matters to technical challenges before the courts. Faria v. Comm'r of Soc. Sec., No. 97-2421, 1998 U.S. App. Lexis 26013, *2, 1998 WL 1085810, * 1 (1st Cir. Oct. 2, 1998) (unpublished) ("When a claimant is represented, the ALJ[ ] should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored.") (citations and internal quotation marks omitted). Unless a conflict between a hypothetical and a particular job is apparent, it is not error for the vocational expert to leave it to counsel to explore these questions. Terry, 580 F.3d at 478. For reasons already indicated, the conflict was not apparent on the record.

---

9    One of the jobs, telephone answering service operator, is classified in the DOT as "semi-skilled" (specific vocational preparation level 3). I assume that a job that cannot be fully learned within 30 days likely involves steps in excess of four and a degree of variability inconsistent with a moderate concentration, persistence, and pace limitation. Nevertheless, there is no suggestion that the remaining three jobs do not exist in significant numbers.

17

C. **Inaudible passages in the transcript**

Fallon's final challenge concerns the number of inaudible passages in the hearing transcript. Fallon does not offer a focused argument describing how any particular inaudible passage prevents the Court from meaningfully reviewing the Judge's decision, though she does allude to Dr. Claiborn's testimony.

The issue is whether the record allows for informed judicial review. Harrison v. Ppg Indus., 446 U.S. 578, 594 (1980). This District has remanded for further proceedings on the basis of an unacceptable transcript, but the transcript quality has been far worse than what is at issue here. Dandeau v. Heckler, 607 F. Supp. 583, 584 (D. Me. 1985). Based on my own review of the record, I am not persuaded that the inaudibility of certain testimony at the hearing frustrates the Court's ability to understand the nature or import of Dr. Claiborn's testimony. Fallon does not even suggest that Dr. Claiborn testified that she cannot attend to and perform basic tasks. See Kalman v. Barnhart, No. Civ. 03-022-M, 2004 WL 848224, *6 (D. N.H. Apr. 20, 2004) (rejecting such an argument where the claimant had not actually argued that the inaudible word was to her benefit). Remand is not warranted on the basis of this argument.

**Conclusion**

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court AFFIRM the Administrative Law Judge's decision and enter judgment in favor of the Commissioner.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 14, 2011